CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 05, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **CHARLES JERALL SMITH,** | ) | |
| Plaintiff, | ) | **Case No. 7:26-cv-00192** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **CHAD T. LARD, et al.,** | ) | **Senior United States District Judge** |
| Defendants. | ) | |

### MEMORANDUM OPINION

Charles Jerall Smith, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against two doctors at Marion Correctional Treatment Center, Dr. Chad Lard and Dr. Anne Horst. The case is currently before the court for review under 28 U.S.C. § 1915A(a). Having reviewed the complaint, the court concludes that it must be dismissed under § 1915A(b)(1).

### I.      Background

According to the complaint, Smith saw Dr. Lard on September 23, 2024, and complained of dizziness, heavy weight on the right side of his body, imbalanced walking, hearing Virginia Department of Corrections (VDOC) employees talking to him in his head, and seeing animated pictures when he closed his eyes. Compl. Attach., ECF No. 1-1, at 2. Smith also informed Dr. Lard that his brain had a "computer microchip" that was "being used against [him]." Id. Smith alleges that Dr. Lard told him that there was no computer microchip in his brain and that the doctor "did not provide [him] with any medical care concerning the computer microchip." Id. Instead, Dr. Lard referred Smith to a neurologist based on his abnormal gait. Id.

Smith saw a neurologist at VCU in Richmond, Virginia, on November 19, 2024. Id. The neurologist noted that Smith was experiencing weakness on the right side of his body. Id. at 3. Based on the physical examination findings, the neurologist ordered an MRI. Id.

Smith underwent MRI testing in December 2024 at a hospital in Wytheville, Virginia, which focused on his brain and spinal cord. Id. at 3. On January 3, 2025, Dr. Lard informed Smith that he had some arthritis but that the MRIs showed no damage to his brain or spinal cord. Id. Dr. Lard said that he would forward the MRI results to the neurologist at VCU. Id.

On April 10, 2025, Smith saw Dr. Lard again regarding his increasingly unsteady gait. Id. at 4. Dr. Lard expressed difficulty determining the reason for Smith's symptoms. Id. Smith alleges that Dr. Lard "did not provide [him] with any medical care concerning the computer microchip in [his] brain on that visit." Id.

Smith had a telehealth appointment with Dr. Horst on May 28, 2025, during which he complained about a computer microchip in his brain. Id. Dr. Horst expressed disbelief regarding the use of microchips by the VDOC. Id. She offered to prescribe a psychotropic medication, but Smith "refused it." Id.

On October 6, 2025, Smith was transported to Carilion Clinic in Roanoke, Virginia, to see a neurologist regarding his unsteady gait. Id. at 5. The neurologist examined Smith and informed him that he may have cervical radiculopathy. Id. Smith told the neurologist that a nurse at Red Onion State Prison had placed a computer microchip in his brain that was being controlled by VDOC employees. Id. Smith also mentioned that he could hear VDOC employees talking to him in his head. Id. The neurologist noted that Smith's medical records

2

included a diagnosis of schizophrenia, which could explain the voices Smith was hearing. Id. at 6.

On December 19, 2025, Smith returned to Carilion Clinic to undergo an EMG study ordered by the neurologist. Id. Based on the results of the study and other medical records, the neurologist diagnosed Smith with mild cervical radiculopathy for which he recommended physical therapy and another MRI of the right side of Smith's body. Id.

Smith claims that Dr. Lard and Dr. Horst violated his constitutional rights by refusing to provide medical treatment "for the computer microchip in [his] brain." Id. at 8. He alleges that VDOC employees are using the microchip to control his central nervous system and cause him to fall. Id. at 8–9. Smith further alleges that the microchip is being used to read his thoughts and use his eyes as video cameras. Id. at 9. He seeks monetary damages and an order compelling the VDOC to turn off the microchip. Compl., ECF No. 1, at 8.

## II.      Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or agent. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). A claim may be summarily dismissed as "frivolous" when it "lacks an arguable basis either in law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint may be dismissed for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.

Complaints filed by pro se litigants must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terrace, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III.    Discussion

Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

The court construes Smith's complaint to assert claims of deliberate indifference in violation of the Eighth Amendment. "Prison officials violate the Eighth Amendment's cruel-and-unusual-punishment clause when they are deliberately indifferent to a substantial risk to an inmate's safety or medical needs." King v. Riley, 76 F.4th 259, 264 (4th Cir. 2023). "A successful medical deliberate indifference claim has 'two components, objective and

4

subjective.'" Phoenix v. Amonette, 95 F.4th 852, 859 (4th Cir. 2024) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)). "The objective component requires that the plaintiff's 'medical condition . . . be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Jackson, 775 F.3d at 178). To satisfy the subjective component, a plaintiff must show that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. Jackson, 775 F.3d at 178. This is an "exacting standard," which is not met by "mere negligence or even civil recklessness." Id.

Applying these principles, the court concludes that Smith's complaint fails to state a cognizable claim of deliberate indifference against Dr. Lord or Dr. Horst. Smith acknowledges that Dr. Lord referred him to neurologists in an effort to address his balance issues and that Dr. Horst offered to prescribe a psychotropic medication to address his mental health issues. The complaint does not set forth any facts from which the court could reasonably infer that either defendant consciously disregarded an excessive risk to Smith's health or safety. To the extent Smith disagrees with the course of treatment provided, mere "disagreement between an inmate and a physician over the inmate's proper medical care . . . fall[s] short of showing deliberate indifference." Id. (internal quotation marks and brackets omitted).

Additionally, Smith's allegations regarding a microchip being implanted in his body and controlled by VDOC officials are appropriately dismissed as frivolous. A court may dismiss a claim as factually frivolous if the factual allegations are "clearly baseless" or describe "fantastic or delusional scenarios." Neitzke, 490 at 327–28. Smith's allegations regarding the implanted microchip fall squarely in this category. See Gary v. United States Gov't, 540 F. App'x 916,

5

918 (11th Cir. 2013) (affirming dismissal of complaint as frivolous where the plaintiff alleged that government officials had implanted microchips in her body that caused tumors and tissue damage); Nicholson v. Boakye, No. 7:17-cv-00273, 2017 WL 33317755, at *2 (W.D. Va. Aug. 4, 2017) (dismissing as frivolous an inmate's claim that a doctor's actions were an attempt to cover up a plot to implant identification microchips in the inmate's body).

## IV.   Conclusion

For the foregoing reasons, the court concludes that the complaint must be dismissed under 28 U.S.C. § 1915A(b)(1). An appropriate order will be entered.

Entered: May 5, 2026

Michael F. Urbanski
U.S. District Judge
2026.05.05
11:17:49 -04'00'

Michael F. Urbanski
Senior United States District Judge

6